# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| **JASON A. KING** | * | **CIVIL ACTION NO.  14-0805** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

### Background & Procedural History

Jason King protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on January 26, 2012.  (Tr. 113-125, 136).  He alleged disability as of September 17, 2010, because of diabetes type II, neuropathy, hypertension, anxiety, high cholesterol, and an inability to sleep.  (Tr. 136, 140). The state agency denied the claims at the initial stage of the administrative process.  (Tr. 38-61). Thereafter, King requested and received a December 3, 2012, hearing before an Administrative Law Judge ("ALJ").  (Tr. 26-37).  However, in a March 25, 2013, written decision, the ALJ determined that King was not disabled under the Social Security Act, finding at step five of the sequential evaluation process that he was able to make an adjustment to work that exists in

substantial numbers in the national economy.  (Tr. 7-16).  King appealed the adverse decision to the Appeals Council.  On April 2, 2014, however, the Appeals Council denied King's request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On April 15, 2014, King filed the instant complaint for review before this court. Succinctly restated, he alleges the following errors,

1)    The ALJ's residual functional capacity assessment is not supported by substantial evidence; and

2)    The ALJ failed to meet his burden at step five of the sequential evaluation process.[1]

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court

---

[1]  For future reference, counsel is reminded that memoranda should be double-spaced. *See* Scheduling Order [doc. # 10] and LR 10.1.

may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

### Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

> (1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2)  An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

> (3)  An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

3

      (4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

      (5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.    Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that King did not engage in substantial gainful activity during the relevant period. (Tr. 12). At step two, he found that he suffers severe impairments of diabetes mellitus; diabetic neuropathy; hypertension; and obesity. *Id*. He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process. *Id*.

### II.    Residual Functional Capacity

The ALJ next determined that King retained the residual functional capacity ("RFC") to

perform the full range of sedentary work.  (Tr. 13-14).[2]

## III.    Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that King was unable to perform his past relevant work.  (Tr. 14-15).  Accordingly, he proceeded to step five.  At this step, the ALJ determined that King was a younger individual, with at least a high school education, and the ability to communicate in English.  *Id*.  Transferability of skills was not material to the determination of disability.  *Id*.  The ALJ then concluded that given King's vocational factors, and an RFC for the full range of sedentary work, the Medical-Vocational Guidelines directed a finding of not disabled.  20 C.F.R. § 404.1569; Rule 201.28, Table 1, Appendix 2, Subpart P, Regulations No. 4.

## Analysis

## I.    Residual Functional Capacity

### a)    Physician/Psychologist Reports and/or Statements

On June 6, 2012, King underwent a consultative physical examination administered by David Hebert, M.D.  (Tr. 225-228).  King's chief complaints included diabetes mellitus, neuropathies, hypertension, anxiety, high cholesterol, and insomnia.  *Id*.  He reported that his neuropathies caused his thighs, shins, and legs to hurt constantly.  *Id*.  He also often felt a burning sensation in his feet.  *Id*.  He explained that the pain was so intense that he could not

---

[2]  Sedentary work entails:

> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

perform any physical activities. *Id*. Upon examination, however, King's gait and station were completely normal, without assistive devices, and he had no difficulty with ambulation or heel/toe walking. *Id*. He exhibited no motor or sensory deficits, no pathological reflexes; motor strength was 5/5 in all areas. *Id*. Furthermore, no neurological deficits were noted. *Id*. Hebert diagnosed diabetes mellitus, insulin-dependent, with no clear evidence of end-organ damage; no significant neurological deficits; arterial hypertension that was adequately controlled; and history of generalized anxiety disorder. *Id*. He opined that he saw no reason why King could not perform routine walking, sitting, standing, carrying, and lifting for an eight hour work day. *Id*. Mentally, he was alert and quite functional. *Id*.

On June 26, 2012, non-examining agency psychologist, Cathy Word, Ph.D., completed a psychiatric review technique form indicating that King's mental impairments were non-severe. (Tr. 235).

On June 27, 2012, non-examining agency physician, Johnny Craig, M.D., relied on Dr. Hebert's report to opine that plaintiff's physical impairments were non-severe. *See* Tr. 238-239, 46-47.

On July 19, 2012, plaintiff's treating physician, Jimmy Coughran, M.D., wrote a letter to plaintiff's attorney in which he stated that King's neuropathy was disabling and caused him daily pain. (Tr. 240). Accordingly, King was unable to sit, stand, or drive for an extended period of time. *Id*.

On December 22, 2012, King underwent a second consultative examination administered by Vinay Patel, M.D. (Tr. 261-263). King's chief complaint was leg pain. *Id*. He reported that he had tried various medications, but none had provided full relief. *Id*. He continued to use narcotics for pain relief. *Id*. King reported weakness and sensory loss or dysfunction. *Id*. Patel

noted, however, that King was independent with his activities of daily living.  *Id*.  Upon

examination, King ambulated without assistance, but his gait/station was slow, antalgic.  *Id*.

Although he was able to rise from a sitting position without assistance, he was unable to fully

squat or heel/toe walk.  *Id*.  His grip strength was 5/5, with adequate fine motor movements,

dexterity, and ability to grasp objects bilaterally.  *Id*.  His vision was 20/20 bilaterally.  *Id*.  He

exhibited good motor tone, with 5/5 strength bilaterally in all muscle groups.  *Id*.  Patel

diagnosed diabetes mellitus, diabetic neuropathy, hypertension, and anxiety/depression.  *Id*.  He

opined that King should be able to sit, hold a conversation, respond appropriately to questions,

and carry out and remember instructions.  *Id*.  However, he would experience difficulty with

prolonged standing and ambulation.  *Id*.

Patel also completed a medical source statement of ability to do work-related activities

(physical).  (Tr. 267-270).  He indicated that King could occasionally lift and carry 51-100

pounds, frequently lift and carry 21-50 pounds, and constantly lift and carry up to 20 pounds.  *Id*.

He further found that King could sit for up to eight hours at one time without interruption, and

stand or walk for up to two hours at a time.  *Id*.  His bilateral upper extremities had no limitation

of function.  *Id*.  Moreover, use of his feet for operation of foot controls was not limited.  *Id*.  He

occasionally could climb ladders or scaffolds, and frequently engage in other postural activities.

*Id*.  Hearing and vision were not impaired.  *Id*.  He frequently could be exposed to unprotected

heights and to loud noise, but there were no other environmental limitations.  *Id*.  King could not

walk a block at a reasonable pace on rough or uneven surfaces.  *Id*.

b)   Discussion

In his decision, the ALJ reviewed the available evidence, including the hearing testimony,

the medical treatment history, and the findings of the treating, consultative, and agency

physicians.  (Tr. 13-14).  The ALJ noted that plaintiff's medical records did not support the level of severity alleged.  *Id.*  Although plaintiff maintained poor control of his diabetes and hypertension at times, he acknowledged that he had been non-compliant with his diet and medication.  *See* Tr. 14, 199, 206, 210, 223.  The ALJ noted, but ultimately rejected the conclusory statement of disability proffered by plaintiff's treating physician, Dr. Coughran.  *Id.*[3] Instead, he assigned "great weight" to the opinions of the consultative physicians.  *Id.*

Plaintiff contends that the ALJ impermissibly rejected the opinion of his treating physician without good cause.  Ordinarily, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . ."  20 C.F.R. § 404.1527(c)(2).  However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir.1995) (citation omitted).  Nonetheless, an ALJ cannot reject a medical opinion without an explanation supported by good cause.  *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (citations omitted).  When the Commissioner declines to accord controlling weight to the treating physician's opinion, then she will consider several factors in determining the weight to be given the opinion.  20 C.F.R. 404.1527(c)(2).  *Id.*  One of those considerations is supportability, i.e., "[t]he more a medical source presents relevant evidence to

---

[3]  In the preceding paragraph of his decision, the ALJ mistakenly stated that "[n]o physician has suggested that [King] is disabled, or indicated that he cannot perform at least sedentary work."  (Tr. 14).  The court finds that this misstatement was harmless and does not compel reversal because the ALJ corrected it by observing that Dr. Coughran *had*, in fact, indicated that plaintiff was disabled, and then providing valid reason(s) to discount Coughran's statement.  *Id.*; *see* discussion, *infra*.

8

support an opinion, *particularly medical signs and laboratory findings*,[4] the more weight [the Commissioner] will give that opinion."  20 C.F.R. 404.1527(c)(2)(ii) (emphasis added).[5]

Here, the ALJ rejected Dr. Coughran's statement because it was conclusory, and not supported by any limitations of function set forth in his own treatment records.  (Tr. 14).  Of course, a physician's statement that a claimant is disabled or unable to work is not accorded any special significance under the regulations.  *See* 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).  Furthermore, the lack of corroborative evidence in the treatment records is a valid reason for discounting a physician's opinion.  *See Ward v. Barnhart*, 192 Fed. Appx. 305, 308, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also Nugent v. Astrue*, 2008 WL 2073891 (5th Cir. May 16, 2008) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions); *Richard ex rel. Z.N.F. v. Astrue*, 2012 WL 2299479 (5th Cir. June 15, 2012) (unpubl.) (ALJ may discredit physician's opinion by pointing to contrary evidence, albeit however tersely); *Garth v. Astrue*, 393 F. App'x 196, 199 (5th Cir. Aug. 26, 2010) (unpubl.) (court noted that ALJ *could have* discounted treating physician's opinion because the opinion contradicted his own treatment notes and the claimant's admissions); *Vansa v. Astrue*, 423 F. App'x 381, 383 (5th Cir. April 20, 2011) (unpubl.) (upholding ALJ's decision to discount treating physician's opinion because, as the ALJ explained, it was "not supported by the objective findings of his own clinic notes nor by the evidence as a whole.").

---

[4]  Laboratory findings are defined elsewhere in the regulations to include such items as blood pressure readings and x-rays.  20 C.F.R. § 404.1513.

[5]  The ALJ, however, need not perform a detailed analysis of § 404.1527(c) factors where, as here, the record contains reliable medical evidence from another examining physician.  *See Holifield v. Astrue*, 402 Fed. Appx. 24 (5th Cir. Nov. 10, 2010) (unpubl.) (citation omitted); *see also Bullock v. Astrue*, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.).

9

In lieu of Dr. Coughran's impressions, the ALJ credited the opinions of the consultative physicians. (Tr. 14). In his memorandum, plaintiff takes issue with agency psychologist Cathy Word's opinion that plaintiff's mental impairments were not-severe because her findings are not supported by any test results. However, Dr. Word explicitly premised her findings on the lack of treatment by any mental health providers, and the absence of symptoms during plaintiff's consultative examination with Dr. Hebert. (Tr. 55).

Plaintiff next faults Dr. Hebert's opinion because it was not supported by any x-rays or MRIs. However, Dr. Hebert observed no functional limitations or evidence of neurological deficits during his examination.[6] Moreover, plaintiff *also* underwent a consultative examination administered by Vinay Patel, M.D., who *did* observe functional limitations and therefore completed a medical source statement that limited plaintiff to sedentary work. *See* Tr. 261-270. Plaintiff does not challenge Dr. Patel's findings.

Plaintiff further contends that the ALJ erred in his credibility determination. The ALJ found that King's medically determinable impairments could reasonably have caused his alleged symptoms. (Tr. 14). He added, however, that plaintiff's statements regarding the intensity, persistence, and limiting effects of his impairments were not entirely credible for various reasons. *Id*. First, the ALJ noted that the medical records did not support the degree of severity alleged. *Id*. Second, he remarked that plaintiff had been non-compliant with medication. *Id*. Third, he observed that plaintiff complained only of leg pain that was relieved by sitting. *Id*.[7] Fourth, the

---

[6] Plaintiff contends that Drs. Word and Hebert found that his impairments affected his ability to perform certain physical activities. *See* Tr. 55-56. However, those findings were rendered by the agency disability examiner at the initial stage of the administrative process, *see* Tr. 56-57, and are not binding on the ALJ who considers the matter de novo.

[7] At the hearing, King testified that sitting made the pain *worse*. (Tr. 34). However, in a third-party disability report, plaintiff's father indicated that plaintiff's impairments did not affect

ALJ emphasized that 1) plaintiff stated that he still would be working if his job had not ended, and 2) he received unemployment benefits for the maximum period which suggested that he held himself out as ready to work, and not disabled. *Id.*

Plaintiff contests the twin bases for the ALJ's fourth point. Although plaintiff initially testified at the hearing that he still would have been at his job if it had not ended, he later testified that his impairments would not have permitted him to stay at the job for more than one month after he did. *See* Tr. 29, 34-35. Whether plaintiff misspoke originally and then later corrected his error, or instead, testified truthfully in the first instance, and then later realized the potentially deleterious effect of his candor, is a credibility determination that the ALJ is permitted to resolve.

Plaintiff further emphasizes that he did not apply for disability until well after he had stopped receiving unemployment benefits. This argument, however, glosses over the fact that plaintiff completed SSA paperwork indicating that his disability began on September 17, 2010, when he stopped working, which overlaps with the period that he held himself out as able to work for purposes of unemployment benefits. *See* Tr. 136, 140.

In sum, the court finds that the ALJ's credibility determination satisfied the requirements of 20 C.F.R. § 404.1529, and is supported by substantial evidence. *See Undheim v. Barnhart*, 214 Fed. Appx. 448 (5th Cir. Jan. 19, 2007) (unpubl.) (opinion as a whole gave sufficient reasons and documentation for the ALJ's credibility determination); *Cornett v. Astrue*, 261 Fed. Appx. 644 (5th Cir. Jan. 3, 2008) (unpubl.) (ALJ gave some weight to claimant's complaints; thus claimant's arguments that his subjective complaints were not given enough weight is unavailing); *Hernandez v. Astrue*, 2008 WL 2037273 (5th Cir. May 13, 2008) (unpubl.) (despite claimant's

---

his ability to sit. *See* Tr. 174. This latter evidence provides substantial support for the ALJ's determination.

subjective allegations of pain, the ALJ gave "greatest weight" to treating physician's opinion).

The undersigned further concludes that the ALJ's residual functional capacity assessment is supported by substantial evidence overall.

## II.    Step Five

Plaintiff contends that the ALJ erred in his step five determination because he failed to pose or entertain any questions to the vocational expert ("VE") who was present at the hearing. The ALJ, however, did not rely on VE testimony in his decision because it was unnecessary. "When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, . . . and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely *exclusively* on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted) (emphasis added); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).

Here, the ALJ determined that plaintiff's impairments caused only exertional limitations that reduced his RFC to the full range of sedentary work.[8]  This determination is supported by substantial evidence.  *See* discussion, *supra*.  Accordingly, plaintiff's assignment of error lacks

---

[8]  To the extent that it could be argued that the medical source statement completed by Dr. Patel included non-exertional limitations not recognized by the ALJ, the court observes that non-exertional impairments which do not significantly impact the occupational base for work do not preclude use of the guidelines.  *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted) (when a claimant's non-exertional impairments do not significantly affect her residual functional capacity, the ALJ may rely exclusively on the Guidelines); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir. 1990).  The additional limitations recognized by Dr. Patel do not significantly erode the capacity for sedentary work.  *See* SSR 96-9p.

12

merit.

### Conclusion

The Commissioner in this case was tasked with determining whether plaintiff was disabled. In so doing, she considered the claimant's testimony, the medical record, and expert opinion evidence. The evidence was by no means uniform and could have supported a different outcome. Such conflicts in the evidence, however, are for the Commissioner to resolve. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (citation omitted); *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971) (citation omitted). This court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).[9] That is not to say that the Commissioner's decision is blemish-free, but procedural perfection in the administrative process is not required, and any errors do not undermine confidence in the decision.

For the foregoing reasons, the undersigned finds that the Commissioner's determination that the claimant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

---

[9] Generally, courts "only may affirm an agency decision on the basis of the rationale it advanced below." *January v. Astrue*, No. 10-30345, 2010 WL 4386754 (5th Cir. Nov. 5, 2010) (citation omitted). One exception to this rule, however, is harmless error, i.e. absent the alleged error or omission, there is "no realistic possibility" that the ALJ would have reached a different result. *Id*. This exception is applicable here.

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 13th day of April 2015.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

14